UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| CATHERINE D. GRIFFITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 13-23-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Catherine D. Griffith ("Griffith" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 6, 7] Griffith argues that the administrative law judge ("ALJ") erred in evaluating the evidence. She seeks reversal of the ALJ's decision and an award of benefits. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court grant the Commissioner's motion for summary judgment. The relief sought by Griffith will be denied.

**I.**

On March 29, 2010, Griffith applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). [Tr., pp. 133-139] She alleged a disability

-1-

beginning April 15, 2009. [Tr., p. 169] Her applications were denied initially and upon reconsideration. [Tr., pp. 64, 76] Griffith, along with her attorney Julie Atkins and vocational expert ("VE") William W. Ellis appeared before ALJ Todd Spangler on June 2, 2011 for an administrative hearing. [Tr., p. 11] On September 13, 2011, ALJ Spangler issued a decision, finding that Griffith was not disabled under section 416.920(g) of the Act. [Tr., p. 21]

Griffith was twenty-one years old at the time of the ALJ's decision. [Tr., p. 20] She completed eleven years of special education and previously worked part-time in a Kroger deli department. [Tr., pp. 36-37, 159] Her alleged disability stems from bipolar disorder, depression, and a nervous condition. [Tr., pp. 157] After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Griffith suffered from a combination of severe impairments, including anxiety and depressive orders. [Tr., p. 13] Notwithstanding these impairments, ALJ Spangler found that Griffith retained the residual functional capacity ("RFC") to perform work at all exertional levels, but limited her to "work that involves only simple, routine tasks with no more than casual contact with coworkers and the general public, and requires a task-oriented setting that involves few changes in routine." [Tr., p. 15]

The ALJ found that Griffith did not have any past relevant work. [Tr., p. 20] However, considering the Claimant's age, testimony of the VE, education, work experience, and RFC, ALJ Spangler found that Griffith could perform other jobs such as kitchen helper, janitor, and laundry worker. [Tr., p. 21] After determining that Griffith could perform other

work existing in significant numbers in the national economy, the ALJ concluded that Griffith was not disabled. As a result of the ALJ's assessment Griffith was denied SSI. [*Id.*]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will

then review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also

supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Griffith raises two primary issues in her motion for summary judgment. First, she claims that the ALJ erred in concluding that she does not have a medically determinable mental impairment regarding her intellectual functioning. [Record No. 6, p. 6] Second, she asserts that the ALJ improperly relied on a hypothetical to VE Ellis that did not accurately describe her. Griffith contends that this resulted in VE's testimony that does not carry the Commissioner's burden of proof at the final step in the evaluation process. [Record No. 6, p. 8]

### A. **Griffith's Intellectual Functioning**

Griffith first alleges error with the ALJ's finding that she did not have a medically determinable mental impairment regarding her intellectual functioning. [Record No. 6, p. 6] Griffith claims that "vocationally relevant restrictions attributable to the claimant's mental impairments preclude successful performance of competitive employment." [*Id.*] She argues that the ALJ relied upon his own opinion without support of the record and that his alleged error was not harmless. [Record No. 6, p. 8; Record No. 8, p. 1] The Commissioner responds that the ALJ properly considered Griffith's intellectual functioning throughout the

evaluation. Alternatively, the Commissioner asserts that the ALJ's finding of Griffith's intellectual functioning as not a "medically determinable mental impairment" is no more than harmless error. [Record No. 7, p. 3]

## 1. Medically Determinable Impairment

Griffith argues that, despite not suffering from an intellectual disability pursuant to Listing 12.05C, she still has an intellectual impairment. [Record No. 6, p. 7] Contrary to Griffith's claims, substantial evidence supports the ALJ's decision that Griffith did not have a medically determinable intellectual impairment. The ALJ analyzed the evidence from the relevant period and that evidence supports his determination.[1]

On September 9, 2010, consultative health examiner Dr. Baggs stated that Griffith's intellectual functioning was only "below average" and her insight and personal judgment were fair. [Tr., p. 266] Dr. Baggs does not state that Griffith had any form of intellectual impairment besides an intellectual functioning that is "below average." [Tr., pp. 260-68] The records from Cumberland River Comprehensive Care Center ("CRCCC") generated during the relevant period by psychologist Brittany Gilliam M.S., L.P.A. and Dr. Syed Raza, state that Griffith's estimated intelligence is "below average" as well as classifying her thought processes as "logical/goal driven" and "reality oriented." [Tr., pp. 242, 325] They also conclude that Griffith has no functional impairment in her cognitive/intellectual

---

1 The period to evaluate Griffith's SSI claim starts when she filed her SSI application in March 2010 and continued to the date of the ALJ's decision on September 13, 2010. 20 C.F.R. §§ 416.330, 416.335; *Casey,* 987 F.2d at 1233.

functioning. [Tr., pp. 226, 330] The CRCCC records also indicated that any borderline intellectual functioning had been ruled out for Griffith. [Tr., p. 243] Additionally, Griffith never alleged any intellectual impairment in her application for SSI. [Tr., p. 157] In short, this evidence supports the ALJ's conclusion that Griffith did not have a medically determinable intellectual impairment.

### 2. Playing Doctor

Griffith also contends that ALJ Spangler impermissibly used Griffith's adaptive functioning scores to rebut her IQ score of 61. [Record No. 6, p. 8] She claims that, due to this impermissible use of adaptive functioning, the ALJ "relied on his own medical opinion without corresponding support in the record." [*Id.*] Griffith states that because the ALJ did not consult a medical advisor or obtain interrogatories from an agency psychologist regarding her intellectual functioning he succumbed to "playing doctor" and improperly concluded that Griffith has no intellectual impairment. [*Id.*]

ALJs are given discretion by the regulations to seek expert opinions when determining a claimant's impairments. 20 C.F.R. 416.927(e)(2)(iii). Griffith's contention that the ALJ erred by failing to consult a medical advisor or obtain interrogatories from an agency psychologist is without merit. She does not cite any authority showing that an ALJ must consult a medical advisor or obtain interrogatories from an agency psychologist. In fact, the regulations "provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony." *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 189 (6th Cir.2009) *cf. Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir.2006) (holding that an

ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.) Here, the ALJ did not substitute his opinion for that of a treating physician or make independent findings. The medical evidence demonstrates that Griffith was merely below average in her intellectual functioning. In several places in the record the evidence demonstrates that there is no functional impairment in her intellectual capability. Records from the CRCCC state that Griffith's intellect was below average, which is a category above a borderline intellectual functioning impairment. [Tr., pp. 242, 325] Her thought processes were found to be logic driven and she was found to not suffer from any functional intellectual impairment. [Tr., pp. 226, 330] In addition, Dr. Baggs only describes Griffith's intellectual functioning as below average. [Tr., p. 266] Therefore, substantial evidence supports the ALJ's conclusion that Griffith had no intellectual impairment. The ALJ considered the medical evidence and concluded that Griffith had the intellectual capacity to perform simple, routine tasks and the medical record supports this conclusion. [Tr., pp. 17-19]

### 3. Harmless Error

Alternatively, even if the ALJ committed error it would be considered harmless. Griffith asserts that the ALJ improperly disregarded her intellectual functioning as non-severe and that error was not harmless. [Record No. 8, p. 1] Griffith's contention that the Commissioner conceded that the ALJ improperly concluded that she did not have a medically determinable mental impairment is incorrect. [Record No. 8, p. 1] In fact, the Commissioner claims that the ALJ's finding was supported by the record but alternatively claims that if it was

not, any error was harmless. [Record No. 7, p. 4] *See Rabbers v. Comm'r of Soc. Sec.*, 482 F.2d 647, 654 (6th Cir. 2009) (holding if an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (citations omitted); *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality"); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("[n]o principle of administrative law or common sense requires the Commissioner to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result") (citations omitted); *see also* Fed. R. Civ. P. 61. While the ALJ did not classify Griffith's impairments as severe, this is not reversible error. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe).

The ALJ considered Griffith's intellectual functioning at all stages of his analysis even though he decided it was not severe enough to be classified as a medically determinable impairment. ALJ Spangler specifically discussed and considered Griffith's intellectual functioning and IQ score when determining her RFC. [Tr., pp. 18-20] He concluded that she had the capacity to understand and remember simple instructions based upon the medical evidence of Dr. Baggs, the CRCCC records, the opinions of Dr. Athy and Dr. Demaree, and

evidence of Griffith's daily functioning. [*Id.*] The ALJ's continued discussion of Griffith's intellectual impairments, in spite of his determination of their severity, shows that even if he had committed error it was harmless.

### B.     ALJ's Hypothetical to the VE

Griffith next claims that the ALJ relied on a hypothetical that did not accurately describe her functional capabilties which resulted in testimony that does not carry the Commissioner's burden of proof at the final step in the sequential evaluation process. [Record No. 6, p. 8] Specifically, Griffith asserts that ALJ Spangler did not adopt all of the restrictions assessed by agency reviewing psychologists Dr. Athy and Dr. Demaree. [Record No. 6, p. 9] Second, Griffith contends that the ALJ's hypothetical did not describe Griffith because it did not include the restrictions opined by Dr. Baggs. [*Id*. at 10] Third, Griffith argues that the ALJ's hypothetical was inadequate because he failed to inform the VE that Griffith's general learning ability ("GLA") was in the bottom tenth percentile of the national population. [*Id*. at 11] The Commissioner claims that the ALJ's RFC finding and hypothetical question to the VE accurately describes Griffith and her mental limitations. [Record No. 7, p. 7] The Commissioner also asserts that Griffith has not shown that she needs more restrictive mental limitations than those determined by the ALJ. [*Id*.]

#### 1.     Dr. Jay Athy and Dr. Ann Demaree

Griffith claims ALJ Spangler improperly disregarded the findings of reviewing psychologists Dr. Athy and Dr. Demaree found in Section I of the Mental Residual Functional Capacity Assessment ("MFRC"). [Record No. 6, p. 9] She claims that the

reviewing psychologists found moderate difficulties in several areas and that the ALJ improperly did not include them in his hypothetical. [*Id*. at 10] These findings include moderate difficulties in:

> (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to work in coordination with or proximity to others without being distracted by them; (4) the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) the ability to interact with the general public; (6) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (7) the ability to respond appropriately to changes in the work setting

[Tr., pp. 285, 296] The Commissioner asserts that the ALJ was not required to include the categories listed as "moderately limited" in his RFC finding and hypothetical question because Section I of the Social Security Program Operational Manual System ("POMS") is not an assessment regarding functional capacity. [Record No. 7, pp. 7-8]

The Social Security Administration's guidelines in POMS state that Section I "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS DI 24510.060 As several courts that have addressed the issue have held, "section I of the POMS form may be assigned little or no weight" because it is "not part of the final RFC finding" in section III of POMS. *Smith v. Commissioner of Social Sec.*, 631 F.3d 632, 635–37 (3rd Cir. 2010); *see also, Velez v. Comm'r of Soc. Sec.*, No. 1:09-CV-0715, 2010 WL 1487599 (N.D. Ohio Mar. 26, 2010); *Coleman v. Astrue*, 3:10CV0464, 2010 WL 4955718 (N.D. Ohio Nov. 18, 2010). Thus, an ALJ does not commit error by failing to incorporate the Section

I findings in his RFC determination. Moreover, when asking the VE a hypothetical, the Sixth Circuit has held that a ALJ's hypothetical question"need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster*, 348 F.3d at 356). The VE's testimony relies on the ALJ's assessment of what the claimant "can and cannot do." *Webb,* 368 F.3d at 633

ALJ Spangler relied on the Section III findings of Dr. Demaree and Dr. Athy in his RFC ruling. Section III lists the limitations of Griffith and the ALJ relied on those limitations in his hypothetical to the VE. The ALJ's assessment of what Griffith could or could not do is based on substantial evidence and his hypothetical not reflecting the Section I findings was not erroneous.

### 2. Dr. Timothy Baggs

Griffith contends that the ALJ's hypothetical to the VE was inaccurate because it did not include the restrictions opined by Dr. Baggs. [Record No. 6, p. 10] The record shows that Dr. Baggs is not a treating source and, therefore, his opinion is not entitled to special consideration or weight. The ALJ stated that he gave the opinion of Dr. Baggs "appropriate weight" and not controlling weight. [Tr., pp. 17-18, 260-68] The record shows that Dr. Baggs is not a treating source. As such, his opinion requires no deference or special consideration. 20 C.F.R. § 416.927(c)(2); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 157 (6th Cir. 2009). The RFC determination is to be made solely by the ALJ. 20 C.F.R. § 404.1546(c) In making this determination the ALJ considers the medical evidence, the non-

medical evidence and the claimant's credibility, not exclusively the medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(1), (3) & 404.1546(c)  The Sixth Circuit has determined that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (internal quotation marks and citation omitted)

ALJ Spangler evaluated the entire evidentiary record and reached an RFC conclusion. He is not required to adopt all of the findings of a consultative examiner. ALJ Spangler considered other medical evidence in the record that contradicted Dr. Baggs's assessment. For example, Dr. Demaree's assessment stated that Griffith has the ability to understand and remember simple instructions, maintain sustained concentration and persistence in completing tasks, and has no more than a moderate difficulty relating to people appropriately and adapting to work stress. [Tr., p. 268] Dr. Baggs stated largely the same conclusion, but added that Griffith has a moderately less to "possibly much less" ability to adapt to work stress. [*Id.*] Dr. Athy reviewed Dr. Demaree's assessment and affirmed her findings. [Tr., p. 297] The ALJ stated that he considered the evidence as a whole, that it was consistent with his RFC finding, and that the record did not suggest that Griffith would have no useful ability in her tolerance for work stress. [Tr., p. 18] He did not substitute his opinion for that of a physician. The ALJ reviewed the entire record and made a determination based on the evidence. His failure to include the entirety of Dr. Baggs's opinion was not in error.

       **3.**     **GLA Guidelines**

Griffith next argues that ALJ Spangler failed to provide instructions to the VE that Griffith's general learning ability fell in the bottom tenth percentile of the national population based on her IQ score. [Record No. 6, p. 11] Griffith claims that the jobs described by the VE could not be performed by a person with her GLA and therefore ALJ Spangler erred by not informing VE Ellis about Griffith's general learning ability and intellectual functioning. [*Id*. at 15] The Commissioner contends that the ALJ's hypothetical to the VE was not in error and that the ALJ was not required to include Griffith's GLA in his questions to the VE. [Record No. 7, pp. 11-14] ALJ Spangler asked the VE to assume that the person in the hypothetical would be limited to simple, routine tasks with no more than casual contact with workers and the general public, and a task oriented setting with few changes in routine. [Tr., p. 51]

The ALJ did not err for failing to mention Griffith's GLA to the VE. Griffith contends that the ALJ erred because her IQ put her in the bottom tenth percentile of the national population and the jobs offered by the VE were only suitable for the bottom third of the population, excluding the bottom tenth percentile. [Record No. 6, pp. 11-15] However, Griffith has failed to cite to any authority supporting the proposition that the ALJ was required to exclude Griffith from the occupations identified by the VE based on her IQ and GLA scores without regard to the other evidence. The GLA is one of several classifications in the Dictionary of Occupational Titles ("DOT") and Griffith has not provided any authority requiring an ALJ to consider this specific classification of the DOT to the exclusion of other relevant facts.

This argument ignores evidence the ALJ considered that supported his finding that Griffith was capable of performing the positions suggested by the VE. The ALJ found that "the overall evidence does not establish that the claimant functions within the bottom 10% of the population as contemplated by the DOT General Learning Ability aptitude." [Tr., p. 19] When making this conclusion, the ALJ found that Griffith's high school evaluation assessed her verbal and non-verbal reasoning as average. [*Id*.] The ALJ specifically noted Griffith's adaptive behavior assessments were average in community use, home living, health and safety, self care, and self direction. [*Id*. at 19-20] ALJ Spangler discussed how Griffith's General Adaptive Composite was 81, which was described as "low average." [*Id*.] The ALJ stated that the longitudinal record shows that Griffith is "able to function independently, read most things, work when she chooses, maintain and operate her own vehicle and deal with simple instructions" and that the most recent treatment notes show no impairment in daily living or personal care. [*Id*.] The ALJ concluded that Griffith's past IQ scores were inconsistent with her current functioning and ability to learn.

The ALJ is permitted to rely on the VE's answer to a hypothetical question to the extent the assumptions included in the hypothetical are supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987). The VE's answers to these questions are substantial evidence "only if the question accurately portrays [the claimant's] individual physical and mental impairments." [*Id*.] It was reasonable for the ALJ to conclude that Griffith's IQ score, dated from when she was in high school at age 17, does not currently reflect her learning aptitude at age 22, when compared to more recent

medical evidence and her daily functioning.  The ALJ did not err in determining that Griffith has the ability to perform work that only involves simple, routine tasks with no more than casual contact with coworkers and the public, that also has a task-oriented setting with few changes in routine.

## IV.

Substantial evidence supports the ALJ's decision that Griffith is not disabled under the relevant provisions of the Social Security Act.  Additionally, the Court rejects Griffith's arguments that the ALJ erred in evaluating the relevant medical evidence and testimony presented for consideration in connection with her claims.  Accordingly, it is hereby

**ORDERED** as follows:

1.Plaintiff Catherine D. Griffith's Motion for Summary Judgment [Record No. 6] is **DENIED**.

2.Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 7] is **GRANTED**.

3.The decision of Administrative Law Judge Todd Spangler is **AFFIRMED**.

This 7th day of October, 2013.



**Signed By:**
*Danny C. Reeves*
**United States District Judge**